## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEVE McCOMB,<br><br>                    Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, in her capacity as<br>Acting Commissioner of the Social Security<br>Administration,[1]<br>                    Defendant. | REPORT & RECOMMENDATION<br><br>Case No. 2:13-cv-0053-RJS-BCW<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Brooke C. Wells |

District Judge Robert J. Shelby referred this case to Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(B).[2]  Plaintiff Steve McComb ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration, which denied his applications for Period of Disability, Disability Insurance Benefits and Supplemental Security Income.  According to Plaintiff, the Administrative Law Judge ("ALJ") made multiple errors that warrant a finding by the Court that the ALJ's decision be reversed and remanded for further proceedings.   In the alternative, Plaintiff requests that this Court find he is disabled as a matter of law and issue an order awarding him benefits.

After careful consideration of the written briefs, the administrative record and relevant legal authorities, the Court had determined that oral argument is unnecessary and issues the following Report and Recommendation **RECOMMENDING** that the District Court **AFFIRM** the decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin ("Commissioner") became the Acting Commissioner of the Social Security Administration.  Accordingly, she has been automatically substituted for Michael J. Astrue as the Defendant in this action.  See 42 U.S.C. § 405(g)("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); F.R.C.P. 25(d)("An action does not abate when a public officer who is a party in an official capacity dies, resigns or otherwise."); docket no. 4.

[2] Docket no. 17.

# BACKGROUND[3]

### A. Procedural History

Plaintiff, Steve McComb, who was born on June 8, 1964,[4] filed applications for disability insurance benefits on April 9, 2008.[5]   In his applications, Plaintiff alleged December 31, 2007 as the onset date of his disability.[6]   Plaintiff met the insured status requirements through December 31, 2012.[7]

Plaintiff's claims were initially denied on July 31, 2008, and upon reconsideration on October 24, 2008.[8]   Then on November 17, 2008, Plaintiff requested an administrative hearing.[9] A hearing before an Administrative Law Judge ("ALJ") was held on February 5, 2009.[10]   On April 20, 2009, the ALJ issued a written decision denying Plaintiff's claims for benefits.[11]   Plaintiff then appealed the denial to the Social Security Appeals Council.  The Appeals Council denied Plaintiff's request for review on July 22, 2009.[12]   Pursuant to 42 U.S.C. § 405(g), Plaintiff appealed this decision to the District Court.

On September 4, 2009, Plaintiff filed a complaint in case number 2:09-cv-782-DB.  Upon an unopposed motion to remand the case filed by the Defendant, the Court ordered that the case be remanded for further administrative proceedings.[13]   Specifically, the Court ordered that the ALJ to hold another hearing and to

> give further consideration to the level of Plaintiff's literacy and to Plaintiff's limitations in the use of his upper extremities.  The ALJ will also be directed to obtain additional testimony from a vocational expert.  The ALJ will ask the vocational expert whether there is a conflict between his or her testimony and the *Dictionary of Occupational Titles*

---

[3] The Court finds the parties have adequately set forth Plaintiff's medical history in their briefs.  Therefore, the Court will not recite that record in specific detail here.  However, those portions of Plaintiff's medical records that are pertinent to this Report and Recommendation will be noted.
[4] Tr. at 22.
[5] Docket no. 8, Administrative Record [hereinafter referred to as "Tr."] at 13.
[6] Tr. at 386.
[7] Tr. at 15.
[8] Tr. at 13.
[9] Id.
[10] Tr. at 503.
[11] Tr. at 13-24.
[12] Tr. at 514.
[13] Tr. at 491.

("DOT").   If there is a conflict, the expert should explain how such conflict was resolved.[14]

A second hearing before an ALJ was held in Plaintiff's case on March 11, 2011 in Salt Lake City, Utah.[15]  At this second hearing, testimony was heard from Plaintiff, Plaintiff's wife, Tonya McComb and a vocational expert.   At the outset of the hearing, Plaintiff's counsel stated:

> …we've kind of honed down from the first hearing to the real kind of issue here.  And, of course, the—it doesn't appear from the records that we have any kind of meeting of listing.  So we're not looking at Step 3 or –and in Step 4 we found last time that he couldn't do his past work.  So really the issue comes ---- is, is there any job that he could do?[16]

The ALJ answered counsel's question in the affirmative and on July 15, 2011 found Plaintiff not to be disabled.[17]

## B.  ALJ's Written Decision-July 15, 2011.

The ALJ found at Step One of the required sequential evaluation process[18] that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 31, 2007.[19] At Step Two, the ALJ found Plaintiff had the following severe impairments:  (1) degenerative disc disease of the lumbar spine; (2) bilateral degenerative joint disease of the knees; (3) a learning disorder; (4) affective/mood disorder; and (5) mild mental retardation.[20]  At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained in the regulations.  In his opinion, the ALJ noted counsel's statement at the most recent hearing, "that it appeared from the medical

---

[14] Tr. at 491-492.
[15] Tr. at 417.
[16] Tr. at 420.
[17] Tr. at 386-404.
[18] See Grogan v. Barnhart, 399 F.3d 1257, 1261(10th Cir. 2005)(explaining the five-step sequential evaluation process for determining whether and individual is disabled).
[19] Tr. at 389.
[20] Id.

evidence that claimant did not meet or equal a listings."[21]   Nonetheless, the ALJ stated that he considered "Listings 1.02 for *Major Dysfunction of a Joint(s)* and 1.04 for *Disorders of the Spine* of the Listings of Impairments, Appendix 1, Regulation No. 4."[22]

Next, the ALJ found Plaintiff had the residual functional capacity to perform the full range of sedentary, unskilled work, except such work could not require:

Lifting more than 8 ½ pounds at a time on more than a "less than occasional" basis; Lifting and carrying lighter articles weighing more than 3 to 5 pounds, on more than an "occasional" basis (where "occasional" means from very little up to 1/3rd of the day); Standing or walking more than 10 to 15 minutes at one time, nor more than 2 total hours in an 8 hour workday, with the option to use a cane; Sitting more than 15 to 20 minutes at one time, nor more than 6 total hours in an 8-hour workday; Note:  regarding standing/walking and sitting, to be as comfortable as possible, claimant requires the option to make brief postural changes every 10 to 15 minutes (the "sit/stand" option); Bending, twisting or squatting on more than a "less than occasional" basis; Stooping on more than an "occasional" basis; Work on the floor (e.g. kneeling, crawling or crouching) on more than a "less than occasional" basis; Climbing flight(s) of stairs (a few stair steps up or down not precluded); Overhead lifting or overhead reaching on more than a "less than occasional" basis; More than frequent Reaching, frequent Handling, frequent Fingering and frequent Pushing and Pulling but no Feeling duties; Work at more than a low stress level, which means:
- a low production level (where VE classified all SGA jobs as low, average or high production),
- working with the general public "less than occasionally,"

Work at more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only unskilled work tasks;

Work at more than a low memory level, which means:
- the ability to understand, remember and carry out only "simple" work instructions (where "simple" is defined as functioning at GED levels of only Reasoning: 1 Math: 1 Language: 1),
- the ability to remember and deal with only minimal changes in the work instructions from week to week, and
- the ability to remember and use appropriate judgment in making only simple work related decisions.

Further, claimant can perform essentially no reading or writing on the job, but he can match numbers, and jobs must be learned/taught by visual demonstration along with verbal instructions.

---

[21] Tr. at 389.
[22] Id.

Also, claimant can perform no work duties involving repetitive movements with the upper extremities, such as constant stirring or stacking.[23]

At Step Four, the ALJ found Plaintiff is unable to perform his past relevant work as a dog groomer or material handler.[24]   At Step Five, the ALJ found there were a significant number of jobs Plaintiff could perform in the national economy.[25]   The ALJ relying on the testimony of the vocational expert opined Plaintiff could work in occupations such as:  final assembler, masker, and getterer.[26] Therefore, the ALJ found "the claimant has not been under a disability as defined in the Social Security Act, from December 31, 2007, through the date of this decision [.]"[27]

## STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."[28]   If supported by substantial evidence, the findings are conclusive and must be affirmed.[29] Substantial evidence is "more than a scintilla, but less than a preponderance."[30]   "The possibility of drawing to inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[31]

In addition, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[32]   The Court "...may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different

---

[23] Tr.at 391-393.
[24] Tr. at 402.
[25] Tr. at 403.
[26] Id.
[27] Tr. at 404.
[28] Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014).
[29] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[30] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).
[31] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[32] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).

choice had the matter be before it de novo.'"[33]   Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this court will a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[34]

## DISCUSSION

Plaintiff contends he is disabled due to a combination of impairments including "degenerative disc disease of the lumber spine; bilateral degenerative joint disease of the knees; a learning disorder; affective/mood disorder; and mild mental retardation."[35]   Plaintiff raises four issues on appeal:  (1) The ALJ failed to properly evaluate the opinion of Mr. McComb's Treating Physicians, Drs. Passey and Evans; (2) The ALJ improperly evaluated Mr. McComb's credibility; (3) The ALJ failed to Properly Determine Mr. McComb's Residual Functional Capacity ("RFC") and (4) The ALJ erred by failing to resolve conflicts between the VE's testimony and the DOT.   In addition to these arguments, Plaintiff argues that this case should be reversed but not remanded.  Plaintiff argues further fact-finding would serve no useful purpose. Therefore, according to Plaintiff, the Court should immediately award disability benefits.

The undersigned will address each of Plaintiff's arguments in turn below.

### A. Treating Physicians

Plaintiff argues the ALJ improperly evaluated the opinions of Plaintiff's treating physicians, Dr. Mark Passey and Dr. Bruce Evans.  In Plaintiff's Opening Brief, after reciting case law from the 10th Circuit, Plaintiff summarily alleges these medical opinions were "supported by the record as a whole" and "[t]he ALJ failed to weigh physician opinions in accordance with well-established Tenth Circuit case law."   Defendant counters Plaintiff's assertions by stating "[Plaintiff's] arguments are vague and do not specify how the ALJ

---

[33] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).
[34] Jensen v Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).
[35] Plaintiff's Opening Br., docket no. 14 at p.1.

supposedly erred."[36]  In addition, Defendant argues substantial evidence supports the ALJ's

findings related to Dr. Passey and Dr. Evans.   In Reply, Plaintiff again asserts "the ALJ failed to

go through the required process in evaluating the opinions of the treating physicians."[37]  Plaintiff

further argues in his Reply brief that the treating physicians should have been recontacted by the

ALJ "to determine if additional needed information is readily available."[38]

In his opinion, the ALJ analyzed the opinion of Drs. Passey and Evans as follows:

i.  **Dr. Passey**

  On December 16, 2008, Dr. Mark Passey, claimant's treating physician, opined
claimant was unable to perform full-time work activity.  This same doctor
indicated on examination that he did not think there was anything wrong with the
claimant's knee that is acute, but nevertheless prescribed a walking cane.  Also,
the doctor indicates that in his opinion, the claimant has only moderate pain.
There is nothing in this doctors treatment notes that supports the functional
limitations he has described unless you assume the claimant has the extreme pain
problems he alleges and reports to the doctor.  However, there is substantial
evidence showing that the claimant's allegations are not reliable, and I do not find
any reasonable basis to accept his allegations of pain.  Therefore, I do not give
significant weight to the limitations described by this doctor.[39]

ii.  **Dr. Evans**

  On September 14, 2010, claimant's treating physician, Dr. Bruce Evans,
completed a medical statement opining claimant was unable to perform full-time
work activity.  However, the undersigned Administrative Law Judge is not
accepting these opinions as controlling as Dr. Evans himself opined just 10 weeks
prior claimant was capable of performing light duty work.  Also, Dr. Evans never
advised claimant to significantly reduce his performance of activities of daily
living during the course of treating him.  For these reasons, Dr. Evans' opinion is
afforded little weight in the findings made by the undersigned in regard to the
claimant's ability, or lack thereof, to perform work-related activities.[40]

---

[36] Answer Br., docket no. 15 at p. 13.
[37] Reply Br., docket no. 16 at p. 2.
[38] Id.
[39] Tr. at 401.
[40] Id.

In the 10th Circuit, when evaluating Plaintiff's treating physician(s), "…the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."[41]  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded controlling weight, on the matter to which it relates."[42]  "The ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence…'"[43]  "If the opinion is deficient in either of these respects, it is not to be giving controlling weight."[44]  However, "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference[.]"[45]  Thus, at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors"[46] provided in [20 C.F.R. § 404.1527].[47]

As an initial matter, the Court agrees with Defendant's assertion that Plaintiff's arguments with regard to the ALJ's evaluation of the treating physician opinions are vague and do not adequately demonstrate *how* Plaintiff believes the ALJ erred.  Nevertheless, as Defendant points out, Plaintiff essentially raises two arguments with regard to Drs. Passey and Evans.  First, Plaintiff argues the opinions were "supported by the record as a whole."  Second, Plaintiff argues

---

[41] Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011).
[42] Id. (citing Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)).
[43] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).
[44] Krauser, at 1330.
[45] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted).
[46] Krauser, at 1330.
[47] Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)(internal quotation omitted).

8

"the ALJ failed to go through the required process in evaluating the opinions of the treating physicians."

As to Plaintiff's first argument, the Court finds that Plaintiff has failed to demonstrate how the opinions of Dr. Passey and Dr. Evans as consistent with the record as a whole. Plaintiff has not provided any examples or adequately carried his burden in this regard and the Court declines to make Plaintiff's arguments for him. In addition, upon review of the record, the Court finds that in fact, for the reasons the ALJ stated in his opinion, Dr. Passey and Dr. Evans' opinion are not supported by the record as a whole. The record contains numerous inconsistencies with regard to Plaintiff's abilities and pain levels and examples of Plaintiff's malingering.[48] Thus, Plaintiff's first argument fails.

Next, the Court finds the ALJ's analysis of the opinions of Drs. Passey and Evans, while not ideal, adequately followed the framework set forth by the 10th Circuit and any error made by the ALJ in his determination as to these opinions is harmless.

First, the Court notes that the ALJ did not specifically state whether the opinions of Drs. Passey and Evans were given "controlling weight." However, the Court finds by not affording the opinion of Dr. Passey significant weight and by giving Dr. Evans' opinion "little weight," the ALJ implicitly declined to give the opinions controlling weight. Therefore, "[b]ecause [the Court] can tell from the decision that the ALJ declined to give controlling weight to [the opinions of Drs. Passey and Evans, the Court] will not reverse on this ground alone."[49]

Likewise, as to the second step of the treating physician opinion analysis in this Circuit, the Court finds no legal error. Importantly, the Court notes that the 10th Circuit has held that an

---

[48] See Tr. at 672, 690.
[49] See Mays v. Colvin, 739 F.3d 569, 575 (10th Cir. 2014).

ALJ need not expressly apply each factor in weighing a medical opinion.[50]  In the instance case, the ALJ listed the regulatory factors he must consider and the record shows that the ALJ adequately considered the factors, even though he did not expressly apply each factor in his analysis of the medical opinions.

As to Dr. Passey, the ALJ essentially found Dr. Passey's opinion to be inconsistent with his treatment notes by citing specific examples of inconsistencies.   The Court is particularly persuaded that the ALJ had a legitimate basis to discount Dr. Passey's opinion of Plaintiff's limitations because Dr. Passey's notes contained such statements as "[i]t is always hard to know whether you are helping a patient whose main goal in life is to get on permanent long term compensated disability status.  Nonetheless, I think that Mr. McComb has responded well to a modest dose of once a day long-acting morphine and we will continue this strategy."[51] In addition, the ALJ found Dr. Passey's opinion to be overly reliant on Plaintiff's subjective complaints—which the ALJ found not to be credible.  Upon review, and without adequate demonstration by the Plaintiff as to how the ALJ's findings were in error with regard to Dr. Passey, the Court finds the ALJ provided "good, legitimate reasons" for discounting Dr. Passey's opinion and not affording it controlling weight.

Next, as to Dr. Evans, the ALJ also discounts his opinions for essentially the same reasons he discounted Dr. Passey's opinion as being inconsistent with his treatment notes.   As the ALJ noted, on September 14, 2010, Dr. Evans opined claimant was unable to perform full-time work activity.[52]  However, just 10 weeks prior on June 10, 2010, and after performing knee surgery on Plaintiff, Dr. Evans stated the following as to Plaintiff's work status, "he needs an addition two weeks off after the Synvisc-One and then I will release him back to work on July 1,

---

[50] See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).
[51] Tr. at 672.
[52] Tr. at 820.

2010.  At that time, he will be placed on some restrictions with light duty."[53]  The record reveals only one visit to Dr. Evans in the intervening time period where Dr. Evans expressed Plaintiff was still experiencing pain and prescribed a knee brace.[54] Therefore, the Court finds the ALJ's decision not to provide controlling weight to Dr. Evans' opinion but rather afford it "little weight" is supported by substantial evidence.  The ALJ's opinion specifically reveals that the ALJ applied and considered factors 3, 4, and 7 contained in the regulations and 10th Circuit case law.[55]

Lastly, without citing any specific finding or language used by the ALJ in his decision, Plaintiff suggests the ALJ should have recontacted Plaintiff's treating physicians but failed to do so.[56]  The Court disagrees.  Social Security regulations and policy interpretations recognize that an ALJ need only recontact a treating source "[i]f the evidence from a claimant's treating doctor is inadequate to determine if a claimant is disabled."[57]  In the instant case, the ALJ had no duty to recontact Drs. Passey or Evans because the administrative record contained enough information from these physicians in order to evaluate whether Plaintiff is disabled.  The ALJ had treatment notes from these physicians as well as their medical opinions as to Plaintiff's impairments and/or ability to work.  In addition, Plaintiff has not adequately carried his burden in demonstrating that there is any ambiguity or lack of documentation that would require a remand for failure to recontact Plaintiff's treating physicians.  Therefore, the Court finds Plaintiff's argument to be without merit.

---

[53] Tr. at 812.
[54] Tr. at 811.
[55] See supra note 46.
[56] See Reply Br., docket no. 16 at p. 2. ("The ALJ did not recontact any treating physician.")
[57] Daniell v. Astrue, 384 Fed. App'x 798, 803 (10th Cir. 2010)(internal citations omitted); see also SSR 96-5p, 1996 WL 374183 at *6 (S.S.A. July 2, 1996)("...if the evidence does not support a treating sources' opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis for the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.")

**B.  The ALJ's Adverse Credibility Determination**

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."[58]  In this decision, the ALJ found Plaintiff not to be credible for a number of reasons.   First, the ALJ found based on the administrative record, "…the claimant can perform at higher levels than he states, or perceives he can."[59]  Specifically, the ALJ reasoned:

> [t]his is due in part, to the fact claimant has reported an extremely limited lifestyle due to his physical and mental impairments; yet, throughout the time period at issue, he has been able to independently perform his activities of daily living, including caring for his own personal needs, caring for his two-year old disabled daughter, some housework, preparing simple meals, watching television and movies, driving, shopping, handling finances and playing card games.  These abilities clearly indicate that the claimant retains adequate range of motion and the mental capacity to perform at least sedentary, unskilled work.  Also, all of these activities are highly inconsistent with the claimant's allegations of daily pain and of total disability.[60]

Next, the ALJ found Plaintiff's pain complaints far exceed any acceptable, objective medical evidence of a physical or mental source for the degree of impairments alleged.[61]  The ALJ then noted Plaintiff has done very little in finding employment and this "…taking this less active track in life is more of a lifestyle choice the claimant has made for himself than a limitation caused by severe physical and psychological symptoms, as he has had shown little effort to get better and get an easier job, and seems to be invested in getting on long term disability."[62]  The ALJ then further discounted Plaintiff's credibility due to allegations and

---

[58] <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995)(internal quotations omitted).
[59] Tr. at 399.
[60] <u>Id</u>.
[61] <u>Id</u>.
[62] <u>Id</u>., 400.

suggestions of malingering being found throughout the record.[63]  Lastly, the ALJ reasoned, "[t]he main premise behind this denial is that the claimant does not experience disabling pain but can do the work suggested by the vocational expert with the levels of pain he is experiencing when he is able to change his postures frequently, which in this case is every 10 to 15 minutes or so."[64]

Plaintiff argues the ALJ erred because the ALJ failed to actually consider the proper factors and explain why the ALJ concluded that specific complaints were not credible or to link the explanation to the evidence.  The Court finds this argument to lack merit.  Rather, the Court agrees with Defendant that "Plaintiff's arguments as to credibility are essentially that the ALJ should have weighed the evidence differently."[65]

The Court finds no error in the ALJ's credibility determination.  The ALJ's reasons for discounting Plaintiff's credibility are supported by substantial evidence in the record on which the ALJ relied.  The ALJ provided multiple reasons, examples and citations the record to support his findings as to Plaintiff's credibility.  Thus, the ALJ committed no legal error in his credibility determination.

## C.  RFC

Plaintiff next argues that the ALJ erred in his assessment of Plaintiff's RFC because the ALJ's determination failed to comply with SSR 96-8p.  Specifically, Plaintiff argues the RFC "appears as a conclusion" and contains "no reasoning or no citation to specific facts."[66]  The Court finds Plaintiff's arguments fail with regard to the ALJ's RFC assessment.

---

[63] Tr. at 400.
[64] Id.
[65] Docket no. 15 at p. 20.
[66] Opening Br. at p. 15-16.

SSR 96-8p provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities observations)" and that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").   Here, the ALJ found Plaintiff to have the RFC to perform a full range of sedentary, unskilled work, with additional limitations.   Then, the ALJ provided nine pages of commentary, supporting discussion and reasoning.   The Court's reading and review of this discussion demonstrates that the ALJ summarized claimant's testimony at the hearing, the testimony of Plaintiff's wife, the objective evidence in the record (noting inconsistencies), Plaintiff's credibility and opinion evidence.   The Court finds no error in the ALJ's formulation of the Plaintiff's RFC and finds the ALJ complied with the requirements of 96-8p.   Moreover, the ALJ's decision provides adequate reasoning and citation to specific facts. The Court therefore finds the ALJ's findings as to Plaintiff's RFC permits meaningful judicial review and shows that the ALJ's determination is based on substantial evidence contained in the record as a whole.

### D.  Step Five Analysis

Plaintiff's final arguments focus on the differences between the RFC the ALJ assessed in this case, the DOT and the regulatory definition of "sedentary work."

The Commissioner bears the burden at Step Five.[67] ALJs routinely rely on the testimony of vocational experts ("VE") in determining whether other jobs exist in significant numbers in the national economy for individuals with various impairments and limitations. "Occupational evidence provided by a VE…generally should be consistent with the occupational information

---

[67] See Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998).

supplied by the DOT."[68]  Further, "before an ALJ may rely on expert vocational evidence as

substantial evidence to support a determination of nondisability, the ALJ must ask the expert

how his or her testimony as to the exertional requirement of identified jobs corresponds with the

Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this

point."[69] Lastly, "Social Security Ruling 00–4p,…requires a reasonable explanation for conflicts

between a VE's testimony and the DOT relating to any 'occupational information.'"[70]

     Here, upon review of the transcript of the administrative hearing and the ALJ's

questioning of the vocational expert, the Court finds the ALJ's decision meets the legal

requirements of SSR 00-4p and 10th Circuit precedent.  Thus, Plaintiff's arguments are without

merit.   As articulated by Defendant, "the VE here specifically reduced the numbers of jobs

available to account for Plaintiff's specific restrictions, including the lifting restriction and

sit/stand option.  This is precisely the purpose of VE testimony."

     In addition, the Court finds Plaintiff's arguments with regard to his use of a cane and

overhead reaching to be baseless.  At the hearing, the VE testified that all three of the jobs he

identified would accommodate the need for a cane and the hearing transcript demonstrates that

the VE was aware of the limitations with regard to overhead reaching.[71]

     Therefore, the Court finds the vocational expert provided a reasonable explanation for

this departure from the DOT's classifications and the ALJ properly relied on the vocational

expert's testimony for departures from the additional limitations he assessed in Plaintiff's RFC.

Thus, the ALJ committed no reversible error at Step Five.

---

[68] SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000).
[69] Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999).
[70] Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005)(citing SSR 00-4p, 2000 WL 189704 at *2).
[71] Tr. at 470-473.

## CONCLUSION & RECOMMENDATION

For the foregoing reasons, the undersigned **HEREBY RECOMMENDS** that the Commissioner's decision in this case be **AFFIRMED** and Plaintiff's request for reversal with an immediate award of benefits be **DENIED.**

## NOTICE

Copies of this Report and Recommendation are being sent to all parties who are hereby notified of their right to object.[72]  Pursuant to 28 U.S.C. § 636(b)(1), a party may file objections to the magistrate judge's report, for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.   Failure to object may constitute waiver of objections upon subsequent review.

DATED this 9 March 2015.

Brooke C. Wells
United States Magistrate Judge

---

[72] See 28 U.S.C. § 636(b)(1); F.R.C.P. 72(b).

16